# EXHIBIT 2

Pages 1 - 26

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES DONATO, JUDGE

| | | |
|---|---|---|
| IN RE:  CAPACITORS ANTITRUST LITIGATION. | ) ) ) ) | **No. C 14-3264 JD**<br><br>San Francisco, California<br>April 21, 2022 |
| IN RE CAPACITORS ANTITRUST LITIGATION (NO. III). | ) ) ) ) ) | **No. 17-md-2801 JD** |
| THE AASI BENEFICIARIES' TRUST, BY AND THROUGH KENNETH A. WELT, LIQUIDATING TRUSTEE,<br><br>          Plaintiff,<br><br> vs.<br><br>AVX CORPORATION, et al.,<br><br>          Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | **No. C 17-3472 JD** |
| AVNET, INCORPORATED,<br><br>          Plaintiff,<br><br> vs.<br><br>HITACHI CHEMICAL COMPANY, LIMITED, et al.,<br><br>          Defendants. | ) ) ) ) ) ) ) ) ) ) ) | **No. C 17-7046 JD** |

(CONTINUED ON FOLLOWING PAGE)

**TRANSCRIPT OF PROCEEDINGS**

Transcribed by:  Katherine Sullivan, CSR No. 5812, RMR, CRR

```
 1   BENCHMARK ELECTRONICS          )
     INCORPORATED, et al.,          )
 2                                  )
                  Plaintiffs,       )
 3                                  )
      vs.                           )     No. C 17-7047 JD
 4                                  )
     AVX CORPORATION, et al.,       )
 5                                  )
                  Defendants.       )
 6   _____)
                                    )
 7   ARROW ELECTRONICS, INCORPORATED, )
     et al.,                        )
 8                                  )
                  Plaintiffs,       )
 9                                  )
      vs.                           )     No. C 18-2657 JD
10                                  )
     ELNA CO., LTD., et al.,        )
11                                  )
                  Defendants.       )
12   _____)
                                    )
13   JACO ELECTRONICS, INCORPORATED, )
     et al.,                        )
14                                  )
                  Plaintiffs,       )
15                                  )
      vs.                           )     No. C 19-1902 JD
16                                  )
     NIPPON CHEMI-CON CORPORATION,  )
17   et al.,                        )
                                    )
18                Defendants.       )
     _____)
19

20   APPEARANCES:

21   For Plaintiff Flextronics Electric Group, Ltd., et al.:
                          BRYAN CAVE LEIGHTON PAISNER LLP
22                        1155 F Street NW, Suite 700
                          Washington, DC 20004
23                        Washington, DC 20036
                     BY:  CHARLES E. TOMPKINS, ESQ.
24

25           (APPEARANCES CONTINUED ON FOLLOWING PAGES)
```

**APPEARANCES:** (continued)

The Plaintiff AASI Beneficiaries' Trust, Avnet, Benchmark, and Jaco:

                       BILZIN SUMBERG BAENA PRICE
                        & AXELROD LLP
                       1450 Brickell Avenue, 23rd Floor
                       Miami, Florida 33131-3456
          **BY:  ROBERT WILLIAM TURKEN, ESQ.**
               **SCOTT N. WAGNER, ESQ.**

For Plaintiff Arrow Electronics, Inc.:
                       BOIES SCHILLER FLEXNER LLP
                       401 East Las Olas Blvd., Suite 1200
                       Fort Lauderdale, Florida 33301
          **BY:  STUART H. SINGER, ESQ.**

For Defendants Holy Stone Enterprise Co., Ltd., Milestone Global Technology, Inc., Vishay Polytech Co., Ltd.:
                       JONES DAY
                       555 South Flower Street, 50th Floor
                       Los Angeles, California  90071
          **BY:  ERIC P. ENSON, ESQ.**

For Defendant AVX Corporation:
                       MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
                        AND POPEO PC
                       555 12th St NW, Suite 1100
                       Washington, DC 20004
          **BY:  ROBERT G. KIDWELL, ESQ.**

For Defendants ELNA Co., Ltd. and ELNA America, Inc.:
                       WILMER CUTLER PICKERING HALE AND DORR
                       2600 El Camino Real, Suite 400
                       Palo Alto, California 94306
           **BY:  CHRIS JOHNSTONE, ESQ.**


            **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

1  **APPEARANCES:** (continued)

2  For Defendant Nippon Chemi-con and United Chemi-con.:
                         PAUL, WEISS, RIFKIND, WHARTON &
3                         GARRISON LLP
                         2001 K STREET, NW
4                         Washington, DC 20006-1047
                    BY:  **JOSEPH J. BIAL, ESQ.**
5                         **LEAH HIBBLER, ESQ.**

6  For Defendant Shinyei Corporation of America, Inc.:
                         DENTONS US LLP
7                         1900 K Street, NW
                         Washington, DC 20006
8                    BY:  **GASPARE J. BONO, ESQ.**

9  For Defendant Matsuo Electric Co., Ltd.:
                         MORRISON FOERSTER
10                        425 Market Street
                         San Francisco, California 94105-2482
11                   BY:  **BONNIE LAU, ESQ.**

12  For Defendant Rubycon Corporation and Rubycon America:
                         SHEARMAN & STERLING
13                        401 9th Street, NW, Suite 800
                         Washington, DC 20004-2128
14                   BY:  **TODD M. STENERSON, ESQ.**

15  For Defendant Nichicon Corporation and Nichicon America
    Corporation:
16                        K&L GATES, LLP
                         One SW Columbia Street, Suite 1900
17                        Portland, Oregon 97258
                    BY:  **PHILIP S. VAN DER WEELE, ESQ.**
18
    For Defendant Soshin Electric Company Limited:
19                        BAKERHOSTETLER
                         1050 Connecticut Ave., NW, Suite 1100
20                        Washington, DC 20036
                    BY:  **DANYLL W. FOIX, ESQ.**
21
    For Defendant Taitsu America, Inc.:
22                        BONA LAW PC
                         4275 Executive Square, Suite 200
23                        La Jolla, California 93037
                    BY:  **KRISTEN HARRIS, ESQ.**
24

25          **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

1    **APPEARANCES:** (continued)

2    For Defendants Hitachi Chemical Co., Ltd., Hitachi AIC Inc.,
     and Hitachi Chemical Co. America, Ltd.:

3                               WILSON SONSINI GOODRICH & ROSATI
                                1700 K Street NW, Fifth Floor

4                               Washington, DC 20006
                          BY:   **JEFFREY C. BANK, ESQ.**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | **Thursday - April 21, 2022**         **10:31 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---000--- |
| 4 | **THE CLERK:**  Calling Civil 14-3264, In re Capacitors |
| 5 | Antitrust Litigation; Civil 17-3472, the AASI Beneficiaries |
| 6 | Trust, by and through Kenneth A. Welt, Liquidating Trustee |
| 7 | versus AVX Corporation; Civil 17-7046, Avnet Incorporated |
| 8 | versus Hitachi Chemical Company Limited; Civil 17-7047, |
| 9 | Benchmark Electronics Incorporated versus AVX Corporation; |
| 10 | Multi District Litigation 17-2801, In re Capacitors Antitrust |
| 11 | Litigation (No. III); Civil 18-2657, Arrow Electronics, Inc. |
| 12 | versus ELNA Co., Ltd.; and Civil 19-1902, Jaco Electronics, |
| 13 | Incorporated, et al. versus Nippon Chemi-Con Corporation, et |
| 14 | al. |
| 15 | **MR. TURKEN:**  Good morning, Your Honor.  Robert Turken, |
| 16 | for Avnet, Benchmark, and Jaco. |
| 17 | **MR. WAGNER:**  Good morning, Your Honor.  Scott Wagner |
| 18 | on behalf of AASI, Avnet, and Jaco. |
| 19 | **MR. TOMPKINS:**  Charles Tompkins, Your Honor, good |
| 20 | morning, on behalf of Flextronics. |
| 21 | **MR. SINGER:**  Good morning, Your Honor.  Stuart Singer |
| 22 | on behalf of Arrow Electronics. |
| 23 | **MR. STENERSON:**  Good morning, Your Honor.  Todd |
| 24 | Stenerson, from Shearman & Sterling, on behalf of Rubycon |
| 25 | Corporation and Rubycon America. |

1          **MR. BIAL:**  Good morning, Your Honor.  Joseph Bial for

2    defendants Nippon Chemi-con and United Chemi-con.

3          **MS. HIBBLER:**  Good morning, Your Honor.  Leah Hibbler

4    for Defendants NCC and UCC.

5          **MS. LAU:**  Good morning, Your Honor.  Bonnie Lau for

6    Matsuo Electric Company, Ltd.

7          **MR. ENSON:**  Good morning, Your Honor.  Eric Enson,

8    with Jones Day, on behalf of the Holy Stone defendants.

9          **MR. VAN DER WEELE:**  Good morning, Your Honor.  Phil

10   Van Der Weele, for Nichicon Corporation and Nichicon America

11   Corporation.

12         **MS. HARRIS:**  Good morning, Your Honor.  Kristen Harris

13   on behalf of Taitsu.

14         **MR. BANK:**  Good morning, Your Honor.  Jeffrey Bank on

15   behalf of the Hitachi Chemical defendants.

16         **MR. BONO:**  Good morning, Your Honor.  Gaspare J. Bono,

17   with Dentons, for the Shinyei defendants.

18         **MR. KIDWELL:**  Good morning, Your Honor.  Robert

19   Kidwell on behalf of Defendant AVX Corporation.

20         **MR. FOIX:**  Good morning.  Danyll Foix on behalf of the

21   Soshin defendants.

22         **MR. JOHNSTONE:**  Good morning.  Chris Johnstone for the

23   ELNA defendants.

24         **THE COURT:**  Okay.  Is that it?

25         All right.  Is there one person who's going to be the

1  spokesperson for the defendants?

2       **MR. STENERSON:**  Your Honor, Todd Stenerson on behalf

3  of Rubycon.  I'll be speaking for most of the defendants;

4  although, they may have something to add.

5       **THE COURT:**  Okay.  All right.  Let's do summary

6  judgment first.

7       Here is the situation.  I don't think it will come as any

8  surprise to any of you.  I have had these cases in their

9  original form and then in their Multidistrict Litigation form

10  since 2014, the very day I walked into this courtroom as the

11  United States District Judge.

12       I've lived through two trials, countless *Daubert* summary

13  judgments, motions to dismiss.  I have seen the record in

14  enormous detail.  And, as a result of these years of

15  litigation, every defendant in the MDL case, every defendant

16  with, I think, one minor exception, has settled, typically with

17  substantial sums of money, with the direct purchasers and in

18  some cases the indirect purchasers.  So every defendant but one

19  or two defaulters, I believe, has paid a lot of money to get

20  out of the case.

21       There have been, on the criminal side, eight guilty pleas

22  for the criminal aspects of the price-fixing, and one ACPERA

23  participant.  So eight guilty pleas plus one ACPERA

24  participant.

25       There's just no question that this case is not ripe for

1    summary judgment.  Fact disputes are replete in the record.  So

2    all the summary judgment motions are denied.

3        And that is the last pretrial act I need to do under the

4    MDL order, which means, because every party has not executed a

5    so-called Lexecon waiver, you're going to go back to Arizona.

6    And that's where you're going to go.

7        So, who knows, maybe a change of scenery will help the

8    defendants, help you.  Hard to say.  But my work is done.

9        There's a rather interesting way that the JPML rule is

10   formulated.  I have to make a suggestion of remand.  I will

11   make that suggestion, and you're on your way.

12       So MDL is officially over.  Well, not yet.  JPML has to

13   say yes.  Inevitable that it will.

14       Okay.  Yeah.

15           **MR. TURKEN:**  Robert Turken.

16       There are several *Daubert* motions or motions to strike,

17   that the plaintiffs have filed, that I still believe are

18   outstanding.

19           **THE COURT:**  I did that in the *Daubert* order already.

20           **MR. TURKEN:**  You did.  That was the *Daubert* motion the

21   defendants have filed.

22           **THE COURT:**  Oh.  Okay.

23           **MR. TURKEN:**  I believe there's a motion to exclude a

24   portion of Hitachi expert Mike Williams.

25           **THE COURT:**  Do you happen to have -- you may not have

1    this.  Do you happen to have the docket numbers handy?

2        The docket is enormous.  It's possible I overlooked

3    something.  Do you have the docket numbers?

4            MR. TURKEN:  So we have a motion directed at

5    Nichicon's expert, and that is 625.

6            THE COURT:  Docket 625?

7            MR. TURKEN:  Uh-huh.

8            THE COURT:  Okay.

9            MR. TURKEN:  Then Hitachi, our motion directed to

10   Hitachi's expert is docket number 630.

11           THE COURT:  630.

12           MR. TURKEN:  There is another motion directed to

13   Nichicon's expert and the Film defendants' expert, and that is

14   docket number 623.  And that's it.

15           THE COURT:  Okay.  Well --

16           MR. TURKEN:  Oh, and I think Flex- --

17           THE COURT:  No, Flextronics is staying.  They filed

18   here originally.  So no matter what happens, Flextronics' case

19   will be set for trial, which we'll talk about in a moment.

20       How do you feel about having -- you're going back to

21   Arizona.  Is that right?  Is that where you're going?  How do

22   you feel about letting the next judge handle these?

23           MR. TURKEN:  Your Honor, honestly, our preference

24   would be, as we stated in our papers, that once we're remanded,

25   to file a 1404 motion and, with the Court's blessing, come back

1  here for trial.

2          **THE COURT:**  You'll file that in Arizona.

3          **MR. TURKEN:**  Yes, of course.  One of our clients,

4  AASI, is here.

5          **THE COURT:**  In this District?

6          **MR. TURKEN:**  In this District.  And it will be part of

7  this Court's trial.  And, from our purposes, the efficiency

8  advantages of having this Court try the case just overwhelm

9  everything else.

10          **THE COURT:**  I don't disagree with that, but it's up to

11  the --

12          **MR. TURKEN:**  Obviously.

13          **THE COURT:**  -- Arizona judge to decide.

14     And here's the situation.  Our case filings are up

15  25 percent now.  In this District last year, just last year, up

16  25 percent while everybody was supposedly at home.  They were

17  at home drafting complaints.  So it's up 25 percent which in

18  our District is a couple thousand cases.

19     We're down five judges.  We're down five active judges, so

20  my case load has exponentially burgeoned.  Now, it's not just a

21  tale of woe I'm sharing with you.  I'm just saying I don't know

22  when I can do three more *Daubert* motions in this case.  It

23  could be months.

24     Now, if we were going to go to trial, I would set you for

25  June or July.  The trial I can do.  I'm ready to go on trial.

1    I mean, there's no problem.  There would be no delay whatso- --

2    everything I just said about increasing means nothing for my

3    trial calendar because that comes first.  And had you stayed

4    here, I probably would have set you for trial in June or July

5    of this year, okay.  In other words, a couple of months from

6    now.

7        The *Daubert*s are a different issue because it's just a

8    different track, and I have a lot of things I have to get done,

9    other trials, for example, that need to get done before I can

10   get back to these *Daubert*s.

11       I mean, it could be a good long time.  I'm just saying, it

12   could be 60, 90 days before I get to these.  It could be

13   earlier.  I don't know.  But I don't want to hold things up.

14       **MR. TURKEN:**  Understood.

15       **THE COURT:**  I can't get these done in the next month.

16       **MR. TURKEN:**  These aren't typical *Daubert* motions.

17   For instance, with a couple of the motions we would say the

18   Court has already ruled on the main issue.

19       **THE COURT:**  Oh.

20       **MR. TURKEN:**  By way of example, our motion against

21   Hitachi's expert, Dr. Williams, is that it was improper for him

22   to -- for Hitachi to use him to introduce the Department of

23   Justice statements --

24       **THE COURT:**  Oh, I see.

25       **MR. TURKEN:**  -- here.

1    And Your Honor already ruled on that in the motions *in*
2    *limine*.

3          **THE COURT:**  I did.

4          **MR. TURKEN:**  So that one would take care of that
5    aspect.

6          The other issues that are addressed in the *Daubert* motions
7    are -- again, are very, very simple.  It's possible we could
8    actually defer them until the motions *in limine* stage because
9    they're really not the typical *Daubert* issue.

10         **THE COURT:**  Okay.  So one is excluding the DOJ data
11    and then things along those lines?

12         **MR. TURKEN:**  Yes, Your Honor.

13         **THE COURT:**  It's not like what we did at the
14    (inaudible).

15         **MR. TURKEN:**  No, Your Honor.  Absolutely not.

16         **THE COURT:**  All right.  Okay.  Well, maybe I can do
17    it.  I'll look, okay.

18         I just want to be clear, the trial will not be an issue.
19    We are prioritizing trials.  I've done three, including the
20    last DPP trial for the MDL just a couple months ago in
21    December.  So I can get you in on trial soon.  That's not a
22    holdup for me.

23         But on just these other things, you know, there's just a
24    big backlog.  So I'll do what I can, okay.  If it turns out --
25    I will look at it.  And if it turns out I can't get to them, is

1    the default you would sort of reserve them for motion *in*

2    *limine*?

3            **MR. TURKEN:**  I think so, Your Honor.  That probably

4    would be --

5            **THE COURT:**  Okay.

6            **MR. TURKEN:**  That probably --

7            **THE COURT:**  If it comes back to me, I promise I won't

8    have a problem with that.  We'll make a deal.  I'll take them

9    up.

10           **MR. TURKEN:**  That's fair enough.

11           **THE COURT:**  Okay.  Defendants?

12           **MR. VAN DER WEELE:**  I was going to say --

13           **THE CLERK:**  I'm sorry.

14           **THE COURT:**  Sorry, we're doing this recording thing.

15   You have to say your name.

16           **MR. VAN DER WEELE:**  Okay.  Phil Van Der Weele on

17   behalf of the Nichicon defendants.

18      At least with respect to the *Dauberts* that are directed

19   toward Nichicon, I agree with Mr. Turken, they are not your

20   typical *Dauberts*.  They're more like hearsay objections.

21           **THE COURT:**  Oh, okay.  They are motions *in limine* kind

22   of vein.

23           **MR. VAN DER WEELE:**  Yes, Your Honor.  At least with

24   respect to the ones directed to Nichicon.

25           **THE COURT:**  But you would agree you'd have no problem

1  dealing with them in the motion *in limine* stage?

2          **MR. VAN DER WEELE:**  That is correct, Your Honor.

3          **THE COURT:**  Okay.  And who's the other one?

4          **MR. BANK:**  Your Honor, Jeffrey Bank for Hitachi.  Same

5  thing.  We're fine dealing with them at the motions *in limine*

6  stage.  If the cases remain in Arizona, that judge can deal

7  with them.

8          **THE COURT:**  Okay.  Well, I might do that.  I might

9  answer them.  We'll see.  But, yeah.

10          **MR. STENERSON:**  Todd Stenerson, Your Honor.  We agree

11  with Your Honor's reading of Lexecon and the remand of the

12  Avnet, Benchmark, and Jaco cases to Arizona.

13      I did want to mention briefly, the AASI case, though, that

14  counsel mentioned, that is in front of Your Honor, I don't say

15  this very often, but I don't think that case should be going to

16  trial.  The single damages in that case is $744,000 total.

17          **THE COURT:**  Is that right?

18          **MR. STENERSON:**  Yes.

19          **THE COURT:**  Before trebling though?

20          **MR. STENERSON:**  Before treble.  So after trebling is

21  $2.2 million.

22          **THE COURT:**  Really?

23          **MR. STENERSON:**  And we would ask that the Court send

24  that case to the mediation here in this District to see if we

25  can resolve it.

1          **THE COURT:**  Is that right?  Home run would be about

2      2.1 million?

3          **MR. TURKEN:**  Robert Turken.  That is correct, Your

4      Honor.

5          In fact, if we are not able to have our Arizona cases

6      transferred back here, then we likely would either adopt the

7      suggestion or ask the Court to transfer to Arizona so AASI

8      could be tried together with that case as well.

9          **THE COURT:**  Oh.

10          **MR. TURKEN:**  We think that the 1404 -- the Section

11      1404 motion that we're contemplating will get us back here.

12      And, in that case, then AASI would just go along for the ride.

13          **THE COURT:**  With Flextronics?

14          **MR. TURKEN:**  Well, I will let counsel -- I think

15      the --

16          **THE COURT:**  Let me just tell you, I was going to set

17      Flextronics for July.  You're not going to be ready to go --

18          **MR. TURKEN:**  I think it's unlikely we'll have our 1404

19      ruling by July.

20          **THE COURT:**  How about October?

21          **MR. TURKEN:**  Yes.

22          **THE COURT:**  Sure?

23          **MR. TURKEN:**  No.

24      (Laughter)

25          **MR. TURKEN:**  But think about it from this perspective.

1       **THE COURT:**  Let me just jump in.  I want you to

2   finish.

3       I don't remember -- do you know who the judge is?  I can't

4   remember who he is.

5       **MR. TURKEN:**  So the --

6       **THE COURT:**  You don't need to name the judge.  Do you

7   know anything about the judge's docket?

8       **MR. TURKEN:**  It's a little complicated because we have

9   three different Arizona judges.

10      **THE COURT:**  Oh.

11      **MR. TURKEN:**  The first step is to get it consolidated.

12  That's just a formality.

13      **THE COURT:**  It takes time.

14      **MR. TURKEN:**  So October, I think, is reasonable.  July

15  is not reasonable.

16      **MR. SINGER:**  Your Honor, just briefly, Stuart Singer

17  on behalf of Arrow.  I just want to note that our case will be

18  going back to the District of Colorado.

19      **THE COURT:**  Oh, really?  Colorado.

20      **MR. SINGER:**  And Judge Arguello is the judge.

21      **THE COURT:**  This is not binding on anyone, defendants

22  or plaintiffs, and I am not in any way injecting myself into

23  settlement discussions.  I mean, this is something you

24  disclosed in your initial disclosures and you can easily update

25  that.

1        What do you think your damages, if you hit a home run,

2   what would they be before trebling?

3            **MR. SINGER:**  Our claim is roughly $90 million before

4   trebling.

5            **THE COURT:**  90 million just for your client?

6            **MR. SINGER:**  Ours is one of the major purchasers.

7            **THE COURT:**  Before trebling.  Okay.  All right.

8        Remind me, what is Flextronics' claim before trebling?

9            (Inaudible speaker.)

10            **MR. TOMPKINS:**  Charles Tompkins for Flextronics.

11            **THE COURT:**  Okay.

12            **MR. TURKEN:**  And our claims for Avnet, Benchmark, and

13   Jaco are about 110 million.

14            **THE COURT:**  Before trebling.  Okay.  So there's only

15   one case that --

16            **MR. TURKEN:**  AASI is not a (inaudible).

17            **THE COURT:**  Got it.  All right.  Okay.

18        Can somebody sum up for me what you would like me to do?

19            **MR. TOMPKINS:**  Your Honor, Charles Tompkins for

20   Flextronics.  I think the parties, potentially, depending on

21   how this is all resolved, Flextronics' position is we would

22   like a near-term trial.

23        And while we have no objection --

24            **THE COURT:**  You would like what?

25            **MR. TOMPKINS:**  A near-term trial --

1          **THE COURT:**  Near-term, yes, okay.

2          **MR. TOMPKINS:**  A trial date shortly.

3      And while we have no conceptual objection to trying the

4  case with other plaintiffs, we do have an objection with the

5  current posture of the case because we have now resolved the

6  case against everyone except for NCC.

7      So NCC -- so our trial is a substantially different beast

8  than a trial that involves the formidable --

9          **THE COURT:**  Right.  It's just you and NCC.

10          **MR. TOMPKINS:**  Yeah.

11          **THE COURT:**  Yeah.

12          **MR. TOMPKINS:**  Including, you know, we do have -- for

13  example, we have stipulations with certain defendants' experts

14  not to testify against our experts if joined.  We have

15  cooperation agreements with some of the defendants.

16      So we're happy to have a joint trial if the cases are

17  resolved in such a way that there aren't these enormous

18  differences between Flex case and the other cases.

19          **THE COURT:**  Can you remind me, Mr. Turken, who are the

20  defendants in your case?

21          **MR. TURKEN:**  We have Hitachi, Nichicon, NCC, and UCC,

22  ELNA, Holy Stone, Matsuo.

23          **THE COURT:**  You have the whole slate basically.

24          **MR. TURKEN:**  Pretty much.

25          **THE COURT:**  Okay.  And the other one, your Colorado

1    case?

2            **MR. TURKEN:**  AASI has the same roster.

3            **THE COURT:**  Same roster.

4            **MR. SINGER:**  Stuart Singer for Arrow.  We are

5    somewhere in between the two.  We have -- in addition to NCC

6    and UCC, we have ELNA, Soshin, Matsuo, Taitsu, and Shinyei.

7            **THE COURT:**  I see.  Okay.

8            **MR. TOMPKINS:**  Your Honor, I'm going to note, just

9    because he's listed, one substantive effect of the differences

10   in defendants is that they have a lot of the Film cons- -- the

11   alleged Film conspiracy defendants remaining.  Not to

12   characterize them as two conspiracies substantively.

13       And that is an aspect of the case that Flextronics

14   presently doesn't intend to prove at trial because we resolved

15   the case against all the Film defendants.

16           **THE COURT:**  It may make sense, since Flextronics is

17   really much more focused in terms of defendant and product, it

18   might make sense just to have them do their thing.  And if

19   Colorado and Arizona come back, maybe you two would do it

20   together.

21       I mean, this is just a concept.  Does that sound okay?

22   Let Flextronics go forward?

23           **MR. TOMPKINS:**  Yes.

24           **MR. TURKEN:**  Stuart and I have worked together for

25   years.  That would be we perfectly fine.

 1          **MR. SINGER:**  Stuart Singer on behalf of Arrow.  We are

 2   in complete agreement with doing that.

 3          **THE COURT:**  All right.

 4          **MS. HIBBLER:**  Your Honor, Leah Hibbler --

 5          **THE COURT:**  Yes.

 6          **MS. HIBBLER:**  -- on behalf of NCC and UCC.

 7      Before we get much further into this, could we speak for a

 8   few minutes about the scheduling of a Flextronics trial?

 9          **THE COURT:**  Sure.

10          **MS. HIBBLER:**  NCC and UCC are not able to have a trial

11   this summer because neither of our experts will be available

12   until after August.

13          **THE COURT:**  Why is that?

14          **MS. HIBBLER:**  Our expert, Dr. Haider, is fully

15   occupied with other trials and preplanned travel throughout

16   July and August.

17      Dr. Israel is fully occupied with preplanned travel

18   throughout June.  And then he has trials throughout August as

19   well.

20          **THE COURT:**  Well, I mean, cases settle.

21      I'm not really -- the fact that there are other

22   commitments, 99 percent, nine-nine, federal cases, sadly,

23   settle.  The statistic from Federal Judicial Center.  99.

24      So I understand what you're saying, but I can't build my

25   schedules around the overwhelmingly likely statistical

1    possibility that the experts will not be in trial in July or

2    August.

3        So, I mean, it can't be that much you have to do.  You

4    just went through this.  Your client just went through this in

5    December.  Should be largely in the can, as our Hollywood

6    friends say.  A little bit of tailoring for Flextronics, but

7    you know the evidence.  You've seen it more than once.  It's

8    going to be the same evidence as the conspiracy.

9        Really, the only portion that might be different is

10   Flextronics will have its own damages claim.  But, other than

11   that, it's largely the same pool of evidence you all tried in

12   this very courtroom a couple months ago.  So --

13           **MR. BIAL:**  Your Honor, could I make one point?

14           **THE COURT:**  Yes.

15           **MR. BIAL:**  Joseph Bial for UCC and NCC.

16   Although I don't disagree at all with what Your Honor said

17   about the proof that they're likely to put in on the

18   conspiracy, our defense will be significantly directed toward

19   the foreign purchasers -- purchases, rather, which are

20   considerable for Flextronics.  That was not an issue in the DPP

21   trial.

22           **THE COURT:**  Okay.

23           **MR. BIAL:**  It likely, almost certainly, would not be

24   an issue in the other trial for Mr. Turken --

25           **THE COURT:**  That's not really an expert.  You're just

going to have facts showing that the point of purchase --

     **MR. BIAL:**  Right.  Well, I'm just making the point that I don't think that the trial that we just had in December will overlap in many ways with the trial that -- the defense that we're planning to put on with respect to Flextronics.

     **MR. TOMPKINS:**  Charles Tompkins for Flextronics.  I don't think the FTI issues represent a significant difference in the case.

     There are some differences in the liability evidence because Flextronics was a named target of the conspiracy, unlike the DPPs.  But, I think, the cases overlap pretty significantly.

     **THE COURT:**  Okay.  Well, I really would like to get this done in August at the latest.  We have a lot of work done already with the motions *in limine* and the experts and pretrial rulings and so on.

     So why don't you get together and think about an August date.  Just one defendant this time and one plaintiff.

     I don't remember how many hours I gave last time but, you know -- I won't trim it back too much because the issues are still significant, but it won't be the same amount of time.  So probably two and a half weeks, three weeks, something like that.

     And this time -- did we go 9:00 to 4:00 last time?  I don't remember.  You would know.  Did we do 9:00 to 4:00 last

time?

      **MS. HIBBLER:**  I think we shot for 9:00 to 4:00, Your Honor.

      **THE COURT:**  Okay.  I'll probably do 9:00 to 4:00 again.  I'll regret this, but I'll do 9:00 to 4:00 again and have a lunch, which I normally don't do.  I normally do 9:00 to 2:00 with no lunch.  But in the interest of concentrating the experience, we might do that.

     Anyway, why don't you two get together.  Think about a date in August, okay.

     I have to have it done, at the latest, by the first week of September, end of the first week of September.  Okay.

     I mean, I'm like LaGuardia.  I've got planes stacked up every 500 feet.  And you know what happens when one plane gets out of its lane; everybody crashes.  So you're going to have to help me out here, okay.

     Now, for you all, see what happens.  And come back.  Happy to have you.  Can certainly fit you in for trial, no problem.

     I'll take a look at these docket numbers you gave me, 625, 623, and 630.  If I can knock them out, I will.  If not, I might save them for a motion *in limine* for me or the next person, okay.

     Anything else for today from the plaintiffs?

      **MR. TOMPKINS:**  No, Your Honor.  Not for Flextronics.

      **MR. TURKEN:**  No, Your Honor.  Not for our clients

 1   either.

 2          **THE COURT:**  Okay.  Now, I do have to make this

 3   suggestion.  I don't know what happens after that.  So I don't

 4   know if there's some additional time lag as a result of that.

 5   It's *para incognita* for me.

 6          **MR. WAGNER:**  Paul Wagner, Your Honor.

 7       Once you make the suggestions of remand, the JPML takes it

 8   from there.

 9          **THE COURT:**  I would assume that would be the case.

10   It's odd because the suggestion rule says an opposition can be

11   if filed, which no sense to me whatsoever.

12          **MR. WAGNER:**  I don't think I've ever seen one but --

13          **THE COURT:**  I actually found one.  I found one where

14   somebody opposed it.

15       Anyway, it should be no problem, but I hope that

16   doesn't -- the JPML technically does it.  I would be happy to

17   transfer it today, but they have to actually do it.  So it will

18   be at least a couple of weeks probably.

19          **MR. WAGNER:**  Thank you, Your Honor.

20          **THE COURT:**  Okay.

21          **MR. STENERSON:**  Your Honor, just one last thing.  Todd

22   Stenerson for the defendants.

23       In case we don't see you again, thank you --

24          **THE COURT:**  Oh --

25          **MR. STENERSON:**  -- for your Judge's MDL duties.

1          **THE COURT:**  It's been a delight.  It's actually been a

2    very entertaining case.  I have new MDLs that will, I think, be

3    equally interesting in different ways.

4          But, you know, $700 million in settlements to date.

5    That's a lot of money.  And eight guilty convictions, guilty

6    plea convictions.  So it was a real case.

7          Everybody worked hard on both sides, and particularly

8    Mr. Saveri and his firm, who are not here today, but everybody

9    did a good job.

10          Okay.  We'll see what happens.  Thanks for coming in.

11          **THE CLERK:**  All rise.  Court is in recess.

12               (Proceedings adjourned at 10:57 a.m.)

13                          ---o0o---

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    **<u>CERTIFICATE OF TRANSCRIBER</u>**

3

4       I, KATHERINE POWELL SULLIVAN, CSR NO. 5812, RMR, CRR,

5   certify that the foregoing is a true and correct transcript, to

6   the best of my ability, of the above pages of the official

7   electronic sound recording provided to me by the U.S. District

8   Court, Northern District of California, of the proceedings

9   taken on the date and time previously stated in the above

10  matter.

11      I further certify that I am neither counsel for, related

12  to, nor employed by any of the parties to the action in which

13  this hearing was taken; and, further, that I am not financially

14  nor otherwise interested in the outcome of the action.

15

16

17  DATE:  Saturday, April 23, 2022

18

19

20       _____

21             Katherine Powell Sullivan, Transcriber

22

23

24

25